UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GARCIA and COURTNEY GARCIA, | No. C 05-05144 MHP |
| Plaintiffs, | **MEMORANDUM & ORDER** |
| v. | **Re: Motion for Default Judgment** |
| FIDELITY MORTGAGE COMPANY, et al., | |
| Defendants. | |

Plaintiffs Michael and Courtney Garcia ("the Garcias" or "plaintiffs") filed this action against defendant companies Fidelity Mortgage Company ("Fidelity"), Pacific Home Brokers ("Pacific"), Long Beach Mortgage Company, Washington Mutual and First California Title and individual defendants Bert Coker ("Coker"), Joel Atwater ("Atwater"), Scott Tucker, Michele Roberts and Does 1 through 50 (collectively, "defendants"), alleging violations of the federal Truth in Lending Act ("TILA"), the federal Real Estate Settlement Procedures Act ("RESPA"), California's Consumer Legal Remedies Act ("CLRA"), California's Business and Professions Code, fraud, breach of fiduciary duty, negligence, negligent training and supervision, negligence of notary public and sureties, and infliction of emotional distress. Now before the court is plaintiffs' motion for default judgment against defendant Atwater. Having considered the arguments and submissions of the parties, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

Plaintiffs' claims arise out of an alleged "bait and switch" scheme in which defendants promised plaintiffs that they would help plaintiffs secure a home loan with certain terms and

conditions, but in reality induced plaintiffs to sign a loan contract with significantly less favorable terms and conditions. Compl., Docket No. 1, ¶ 2. In October 2004, plaintiffs met defendant Atwater, who represented to plaintiffs that he could make all of the necessary arrangements to help plaintiffs purchase a home even with "smudged" credit. Id. ¶ 25. Plaintiffs assert that Atwater said he worked for defendant Coker, a licensed real estate broker who owned and operated Fidelity, a mortgage loan business, and Pacific, a real estate brokerage business. Id.; Garcia Dec., Docket No. 89, ¶ 4. However, unbeknownst to plaintiffs, Atwater was not licensed to sell real property or originate home loans. Compl. ¶ 15.

After plaintiffs agreed for Atwater to help them find a home, Atwater filled out a mortgage application for plaintiffs, in which Atwater falsely represented that plaintiffs had rental income of $1000 per month and falsified their employment information. Id. ¶ 27. Atwater represented to plaintiffs that the monthly payment would not exceed $2400. Garcia Dec. ¶ 4. After plaintiffs made an offer to purchase a property in Oakley, California, Atwater had plaintiffs sign documents for two loans totaling $420,000. Compl. ¶ 28. Atwater advised plaintiffs that this amount would raise their monthly payment to $2700, but because Atwater represented to plaintiffs that within six months he would arrange for a refinance at no cost to plaintiffs which would cut the monthly payments in half, plaintiffs agreed to the $420,000 amount. Id.; Garcia Dec. ¶ 5. At the time of the transaction, plaintiffs never received documents relative to the purchase of the property. Compl. ¶ 26. Atwater did not arrange the promised refinancing, and in October 2005 plaintiffs were forced to refinance themselves on terms which were considerably less favorable than those promised by Atwater and at a further cost of $25,000. Compl. ¶¶ 32-33; Garcia Dec. ¶ 7.

Plaintiffs filed this action against defendants on December 2, 2005, alleging the following causes of action against some or all defendants: (1) violation of TILA, 15 U.S.C. section 1601 et seq.; (2) violation of RESPA, 12 U.S.C. section 2601 et seq.; (3) unlawful, fraudulent, and unfair business practices under California's Business and Professions Code section 17200 et seq.; (4) false advertising under California's Business and Professions Code section 17500 et seq.; (5) violation of CLRA, California Civil Code section 1750 et seq.; (6) fraud; (7) breach of fiduciary duty; (8) negligence; (9) negligent training; (10) negligent supervision; (11) negligence of notary public and

sureties; and (12) infliction of emotional distress. With respect to defendant Atwater, against whom the instant action is brought, plaintiffs alleged all causes of action except negligent training, negligent supervision and negligence of notary public and sureties. Atwater never answered or otherwise defended against plaintiffs' complaint, and on July 24, 2006, the court entered a default against Atwater. See Docket No. 21. Plaintiffs obtained judgments against Coker, Fidelity and Pacific in bankruptcy court, and plaintiffs' claims against all defendants except Atwater were dismissed as of March 3, 2009. See Docket Nos. 80 & 85.

Plaintiffs now seek a default judgment against Atwater, who has allegedly fled the jurisdiction after being charged with arson. Garcia Dec. ¶ 8. Plaintiffs seek to recover the following sums: (1) $45,000 in compensatory damages; (2) $10,000 in punitive damages; (3) $20,160 for violating RESPA; (4) $24,795 that Atwater received as a result of a transaction he was not licensed to perform; and (5) $31,408.18 in attorneys' fees and costs.

LEGAL STANDARD

Entry of Default Judgment

After entry of a default, a court may grant a default judgment on the merits of the case. See Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Because default has already been entered in this case, the court must take as true all factual allegations in plaintiff's complaint except for those related to the amount of damages. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

DISCUSSION

I.      Determining Whether to Grant Default Judgment

In this action, a default has already been entered against Atwater, and accordingly, under Federal Rule of Civil Procedure 55(b) the court has the discretion to grant default judgment against Atwater. In exercising this discretion, the court may consider factors such as the possibility of prejudice to the plaintiffs, the merits of the substantive claim, the sufficiency of the complaint, the amount of money at stake in the action, the possibility of a dispute over material facts, whether the default was due to excusable neglect, and the strong policy favoring decisions on the merits. Eitel, 782 F.2d at 1471-72. In considering these factors, the court takes as true all factual allegations in plaintiffs' complaint, except for those allegations pertaining to damages. TeleVideo, 826 F.3d at 917-18.

The court finds that an overall consideration of the factors supports granting default judgment against Atwater. Firstly, plaintiffs will be prejudiced if default judgment is not entered. Atwater's refusal to participate in settlement or mediation conferences or even acknowledge plaintiffs' complaint demonstrates that this judgment is the only means by which plaintiffs can establish Atwater's liability and recover damages for their losses.

Secondly, even under the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) that is required of allegations that sound in fraud, plaintiffs' complaint, when taken together with their recently submitted declaration, is sufficiently factually detailed as to the "who, what, when, where, and how" of Atwater's alleged conduct and the resulting harms to plaintiffs for the court to address whether the claims have substantive merit. See Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997). Additionally, as is required for claims sounding in fraud, plaintiffs have set forth facts regarding Atwater's conduct "from which an inference of scienter could be drawn." See id. at 628, quoting In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1546 (9th Cir. 1994) (*en banc*).

Thirdly, the court is satisfied that plaintiffs' claims against Atwater have substantive merit. Because the claims are mainly grounded in fraud, in order to prevail plaintiffs have to show (1) misrepresentation (e.g. false representation, concealment or non-disclosure); (2) scienter, or

4

knowledge of falsity; (3) an intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. Bank of the West v. Valley Nat. Bank of Ariz., 41 F.3d 471, 477 (9th Cir. 1994), quoting Hackethal v. National Casualty Co., 189 Cal. App.3d 1102, 1111 (1987). Taking plaintiffs' allegations as true, Atwater made false representations regarding his ability to secure loans for plaintiffs at a monthly payment not exceeding $2400 or to refinance higher loans to a lower monthly payment. Plaintiffs have alleged enough facts for the court to infer that Atwater knew these representations were false and that he intended to induce plaintiffs to rely on these false representations. Finally, plaintiffs did rely on these representations and suffered damages in the form of higher mortgage payments and costs from refinancing their loans.

Fourthly, based on the information provided by plaintiffs about the amount of money lost as a result of Atwater's conduct, the court finds that the amount is substantial enough that it favors granting plaintiffs a remedy for recovering that sum.

Fifthly, there is no indication that there is any dispute over material facts. Atwater has had ample time to challenge plaintiffs' allegations, and due to his failure to do so, the court takes all of plaintiffs' factual allegations as true, except for those relating to damages. TeleVideo, 826 F.3d at 917-18.

Sixthly, this is not a situation where the default was due to excusable neglect. Atwater has not merely been late in responding to plaintiffs' allegations, he has entirely failed to respond to the allegations or participate in these proceedings since plaintiffs filed their complaint in December 2005. Accordingly, these factors all support the grant of default judgment.

Finally, the court is mindful of "the general rule that default judgments are ordinarily disfavored" and that "[c]ases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. Here, however, it does not seem reasonably possible that the action can be decided upon its merits. Plaintiffs filed this action in December 2005, and in the more than three years since the action was filed, Atwater has not answered or defended against the complaint or otherwise made any contact with the court regarding this action. Furthermore, plaintiffs indicate that Atwater has fled the jurisdiction. Atwater's notable absence throughout these proceedings makes it

5

1 unlikely that the case against him can be decided on its merits. Accordingly, the court finds it
2 appropriate to grant default judgment against defendant Atwater.

3 II.     Calculation of Damages

4      Having found that a default judgment should be granted for plaintiffs against Atwater, the
5 court next turns to the issue of what relief to award plaintiffs. Although the court, where a default
6 has been entered, takes plaintiffs' allegations as true for the purposes of determining whether to
7 grant entry of default judgment, it does not take plaintiffs' allegations as true for the purpose of
8 calculating damages. TeleVideo, 826 F.3d at 917-18. The court may establish damages on default
9 via an evidentiary hearing, through detailed declarations or affidavits, or by reference to a magistrate
10 judge's knowledge of the record. See, e.g., James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993). The
11 court finds that plaintiffs have not submitted sufficient documentation and testimony regarding their
12 claimed damages for the court to determine the dollar amount that should be awarded. Pursuant to
13 28 U.S.C. section 636(b)(1)(B) and (C), the court refers this matter to a magistrate judge to hold a
14 hearing on the issue of damages and to make findings of fact and recommendations regarding the
15 specific amounts that should be awarded for each requested form of relief. At this hearing, plaintiffs
16 will need to provide the magistrate judge with evidentiary support, such as documents, affidavits or
17 witness or expert testimony, corroborating plaintiffs' claimed damages. In the remainder of this
18 section, the court provides guidance to plaintiffs and the magistrate judge regarding the different
19 types of damages that plaintiffs have claimed.

20     A.     Compensatory Damages

21     "The law imposes on a real estate agent 'the same obligation of undivided service and loyalty
22 that it imposes on a trustee in favor of his beneficiary.'" Vasa N. Atlantic Ins. Co. v. Golden Eagle
23 Ins. Co., 1994 WL 285027, *8 (N.D. Cal. 1994) (Walker, J.), quoting Batson v Strehlow, 68 Cal. 2d
24 662, 674 (1968). This relationship imposes upon the agent a duty of acting in the highest good faith
25 and precludes the agent from obtaining any advantage over his principal in a transaction. Id. "[T]he
26 fraudulent breach of fiduciary duty is a tort, and the faithless fiduciary is obligated to make good the
27 full amount of the loss of which his breach of faith is a cause." Pepitone v. Russo, 64 Cal. App. 3d
28 685, 688 (1976). Where the defrauding party has a fiduciary relationship with the victim, the

1  measure of damages tends to "give the injured party the benefit of his bargain and insofar as possible
2  to place him in the same position he would have been had the promisor performed" his duty. Id. at
3  689. Compensatory damages may also be awarded for emotional distress that can be established by
4  testimony or inferred from the circumstances. Johnson v. Hale, 940 F.2d 1192, 1193 (9th Cir. 1991).

5  Plaintiffs allege, and the court takes as true, that Atwater breached his obligation and
6  fiduciary duty to plaintiffs by engaging in a "bait and switch" scheme in which he represented to
7  plaintiffs with knowing falsity that he would obtain for plaintiffs a home loan with certain
8  conditions, and later that he would arrange refinancing of their loans. Plaintiffs seek to recover
9  compensatory damages for out-of-pocket damages incurred and for emotional distress.

10  With respect to out-of-pocket damages, the court finds that it was Atwater's fraudulent
11  conduct that resulted in plaintiffs' inability to afford the mortgage payments Atwater arranged and,
12  ultimately, forced plaintiffs to refinance their mortgage at a significant expense to them. It should
13  have been reasonably foreseeable to Atwater that plaintiffs would incur these types of expenses and
14  costs as a result of his conduct, and accordingly he should be held liable for these out-of-pocket
15  damages. However, it is not clear what damages, other than the cost of refinancing their loans, that
16  plaintiffs are requesting. See Garcia Dec. ¶ 7. Therefore, at the hearing before the magistrate judge
17  plaintiffs should be prepared to provide evidence documenting the out-of-pocket damages they have
18  incurred.

19  With respect to plaintiffs' request for emotional distress damages, the court finds it credible
20  from plaintiffs' testimony and from the overall circumstances that plaintiffs have suffered emotional
21  distress as a result of Atwater's conduct. Therefore, at the hearing the magistrate judge should make
22  findings of fact regarding plaintiffs' emotional distress and make recommendations regarding an
23  appropriate award. Although plaintiffs are not required to submit evidence of economic loss or
24  medical evidence of mental or physical symptoms stemming from the humiliation, see Johnson, 940
25  F.2d at 1193, they may provide this type of evidence if it is available.

26  Finally, the court notes that a payment that is made by one tortfeasor diminishes the claim
27  against a joint tortfeasor. Seymour v. Summa Vista Cinema, 809 F.3d 1385, 1389 (9th Cir. 1987).
28  Here, plaintiffs obtained judgments against defendants Coker, Fidelity and Pacific in bankruptcy

7

1 court, the terms of which were not provided to this court. The general rule of compensatory
2 damages is that "a plaintiff is not entitled to more than a single recovery for each distinct item of
3 compensable damage supported by the evidence." Theme Promotions, Inc. v. News Am. Mktg. FSI,
4 546 F.3d 991, 1005 (9th Cir. 2008), citing Tavaglione v. Billings, 4 Cal. 4th 1150, 1158-59 (1993).
5 Accordingly, in determining the amount of compensatory damages that should be awarded plaintiffs,
6 the magistrate judge should consider the extent to which plaintiffs have or have not been made
7 whole already by the other defendants. Accordingly, for the hearing before the magistrate judge,
8 plaintiffs should be prepared to provide evidence of the amount of compensatory damages, if any,
9 that has already been awarded plaintiffs in connection with other defendants in this case.

### B.    Punitive Damages

Under California law, punitive damages are appropriate where "the defendant's acts are reprehensible, fraudulent or in blatant violation of law or policy." Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269, 1287 (1994); see also Cal. Civ. Code § 3294(a). For punitive damages to be awarded, the plaintiff must establish by clear and convincing evidence that the defendant is guilty of fraud, oppression or malice. Henry v. Lehman Commercial Paper, Inc., 471 F.3d 977, 998 (9th Cir. 2006). Courts in California have awarded punitive damages for fraudulent misrepresentations by real estate brokers. See, e.g., Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 790 (1979).

The court is satisfied that punitive damages are warranted in this case. This is not a case where the defendant merely acted negligently in breaching his fiduciary duty to plaintiffs. Rather, plaintiffs have alleged, and the court takes as true, that Atwater affirmatively represented to plaintiffs that he could secure a mortgage at certain terms and conditions. After failing to secure this promised mortgage, Atwater made further affirmative representations to plaintiffs that he would be able to refinance the loan to reduce the payments to the initially promised amount. From Atwater's total failure to deliver, his repeated misrepresentations, his failure to respond in any way to plaintiffs' complaints or to this law suit, and his finally absconding, the court can reasonably infer that he never intended to make good on his promises to plaintiffs. Accordingly, the court finds that

1  plaintiffs have established by clear and convincing evidence that they are entitled to punitive
2  damages.
3  The magistrate judge should consider and make recommendations on the amount of punitive
4  damages that is appropriate in this case.

### C. Damages for Violation of RESPA

RESPA is a federal law that "prohibits the giving or receiving of fees for referral as part of a real estate settlement service but permits fees that are paid for facilities actually furnished or services actually performed in the making of a loan." Schuetz v. Banc One Mortgage, 292 F.3d 1004, 1005-06 (9th Cir. 2002); see also 12 U.S.C. § 2607(a), (c)(2). One type of fee is a yield spread premium ("YSP"), a lump sum paid by the lender to the broker that is based on the difference between the interest rate at which the broker originates the loan and the market rate offered by the lender. Schuetz, 292 F.3d at 1005. RESPA does not prohibit YSPs *per se*, but in some cases a YSP may violate RESPA if the amount does not correlate with the services provided by the broker and the total compensation paid for these services. Id. at 1014; see also Geraci v. Homestreet Bank, 347 F.3d 749, 751 (9th Cir. 2003). In order to determine whether a YSP is permissible under RESPA, courts apply a two-prong test. First, the court must determine "whether goods or facilities were actually furnished or services were actually performed for the compensation paid." Schuetz, 292 F.3d at 1010. If goods or facilities were furnished or services were performed, the second prong is to determine "whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed." Id. For the second prong, "the pivotal question is whether a mortgage broker's *total compensation* is reasonable," not just whether the individual YSP is reasonable. Id. at 1011. Total compensation must be reasonably related to the total value of the goods or facilities provided or the services performed, and should be commensurate with the amount normally charged for similar services in similar transactions in similar markets. Id.

Plaintiffs allege that in addition to paying a commission on the purchase of the property, they also paid a YSP and an origination fee, and that the amount that they paid for these fees was much

9

1 larger than what was charged to other similarly situated borrowers, such as their relative Scott
2 Sanders (who has brought a related case against Atwater in this court).  Garcia Dec. ¶ 9.  Plaintiffs
3 assert that these fees are not reasonably related to the services provided to them, and accordingly,
4 they are entitled to recover treble damages for this violation of RESPA.  <u>See</u> 12 U.S.C. § 2602(d)(2).

5       Based on the facts alleged by plaintiffs, the court finds under the first prong of the test that
6 services were provided to plaintiffs by Atwater.  However, the court does not have enough
7 information to evaluate under the second prong whether the fees paid by plaintiffs were reasonably
8 related to the value of the services provided.  For the hearing before the magistrate judge, plaintiffs
9 should be prepared to provide evidence of the total compensation provided to Atwater, as well as
10 evidence of the amount normally charged of similarly situated buyers for similar services, so that the
11 magistrate judge can consider whether Atwater's total compensation in this case was commensurate
12 with the value of the services provided.  The court notes for plaintiffs' benefit that the settlement
13 statement that plaintiffs provided to the court does not document the total compensation provided to
14 *Atwater*, as opposed to other defendants.  Accordingly, plaintiffs should be prepared to present
15 additional evidence on this point at the hearing.

16       D.     <u>Disgorgement Pursuant to California Unfair Business Practices Law</u>

17       In California, it is "unlawful for any person to engage in the business, act in the capacity of,
18 advertise or assume to act as a real estate broker or a real estate salesman within this state without
19 first obtaining a real estate license."  Cal. Bus. & Prof. Code § 10130.  A real estate broker is "a
20 person who, for a compensation or in expectation for a compensation . . . [s]ells or offers to sell,
21 buys or offers to buy, solicits prospective sellers or  purchasers of, solicits or obtains listings of, or
22 negotiates the purchase, sale or exchange or real property or a business opportunity."  Cal. Bus. &
23 Prof. Code § 10131(a).  California's unfair competition law, which is codified at California Business
24 and Professions Code section 17200 <u>et seq.</u> and which proscribes any unlawful business practice,
25 "borrows violations of other laws and treats them as unlawful practices that the unfair competition
26 law makes independently actionable."  <u>Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal.
27 4th 163, 180 (1999) (internal quotations omitted).  Accordingly, acting as real estate broker without
28 a license is a violation of state business law that may be actionable under state unfair competition

1 law. Although unfair competition law does not provide for compensatory damages, it can provide a
2 person with restitution of money that was once in that person's possession. Cortez v. Purolator Air
3 Filtration Prods. Co., 23 Cal. 4th 163, 178 (2000); see also Cal. Bus. & Prof. Code § 17203.

4    Here, the court takes as true plaintiffs' allegation that Atwater was not licensed to perform
5 the real estate services provided to plaintiffs. Because Atwater's actions violated state business law,
6 plaintiffs may use state unfair competition law to disgorge Atwater of any money plaintiffs paid him
7 in connection with these unlawful business practices. For the hearing before the magistrate judge,
8 plaintiffs should be prepared to provide evidence as to what money plaintiffs paid Atwater in
9 connection with Atwater's provision of real estate services.

10   As a final note on this issue, and for plaintiffs' benefit, the court notes that the settlement
11 statement that was provided to the court is insufficient evidence to establish the amount that
12 plaintiffs paid to Atwater. Although plaintiffs allege that this statement shows that they paid
13 $10,500 to Pacific, line 702 indicates that the $10,500 commission was paid from the seller's funds,
14 not plaintiff's funds. See Garcia Dec., Exh. 1 at 2. Furthermore, although the statement shows
15 various fees that were paid to Fidelity, it is not clear to the court how the figure of $14,295 was
16 arrived at. Id. Furthermore, even if plaintiffs can establish the total amount paid in real estate and
17 mortgage brokerage fees, they must also provide evidence corroborating their allegation that
18 Atwater was paid all but $500 of this amount.

19   E.   Attorneys' Fees and Costs

20   Federal Rule of Civil Procedure 54(d) permits an award of costs other than attorneys' fees to
21 a prevailing party as a matter of course. See Fed. R. Civ. Pro. 54(d)(1). This district's Civil Local
22 Rule 54-1 sets out the procedures by which a prevailing party claiming costs must serve and file a
23 bill of costs, including attaching appropriate documentation to support each item claimed. See N.D.
24 Cal. Civ. L.R. 54-1(a). Federal Rule of Civil Procedure 54(d) also permits a party to file a motion
25 for attorneys' fees, specifying the statute or grounds entitling the movant to the award. See Fed. R.
26 Civ. Pro. 54(d)(2)(B)(ii). This district's Civil Local Rule 54 sets out the specific procedures for
27 requesting attorneys' fees, including providing a statement of the services rendered by each person, a
28 summary of the time spent, a statement describing the manner in which time records were

1 maintained, a description of the relevant qualifications and experience, and a statement of the
2 customary hourly charges of each person.  See N.D. Cal. Civ. L.R. 54-6(b).

3 Plaintiffs request attorneys' fees and costs on the ground that a party is entitled to recover
4 attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 for enforcing the law
5 that requires one who is engaged in the real estate or mortgage brokerage services be licensed.  It is
6 not clear to the court that section 1021.5 applies, as this section refers to "an important right
7 affecting the public interest."  See Cal. Code Civ. Proc. § 1021.5; see also Riverside Sheriffs' Ass'n
8 v. County of Riverside, 152 Cal. App. 4th 414, 422 (2007).  However, it appears to the court that
9 plaintiffs may recover attorneys' fees and costs under RESPA, which states that "[i]n any private
10 action . . . the court may award to the prevailing party the court costs of the action together with
11 reasonable attorneys fees."  12 U.S.C. § 2607(d)(5).  It appears that plaintiffs' most viable argument
12 for claiming attorneys' fees lies with this provision of RESPA, rather than with section 1021.5 or
13 with other California statutes such as Business and Professions Code section 17200 (which generally
14 provides attorneys' fees in connection with class actions) or California Civil Code section 1750
15 (which applies to consumer purchases of goods and services but may not include the sale of real
16 property).  Therefore, the prayer for attorneys' fees and costs will be treated under RESPA and
17 granted in an amount to be determined by the Magistrate Judge.

18 For the hearing before the magistrate judge, plaintiffs should be prepared to provide more
19 specific information on the specific attorneys' fees and costs being claimed.  For attorneys' fees, the
20 local rules require that plaintiffs provide information regarding the specific services rendered, the
21 amount of time spent for each of those services, and the manner in which time records were
22 maintained, as well as a description of the attorney's relevant qualifications and experience so that
23 the court can determine whether this hourly charge is reasonable.  For costs, plaintiffs needs to
24 provide specific information about what those costs are.

25

26 CONCLUSION

27 For the foregoing reasons, the court **GRANTS** plaintiffs' motion for default judgment and
28 **REFERS** the matter to Magistrate Judge Maria Elena James pursuant to 28 U.S.C. section

12

1  636(b)(1)(B)and (C) for the purpose of conducting an evidentiary hearing and submitting a report
2  and recommendation on the amount of damages, attorneys' fees and costs to be awarded.
3        IT IS SO ORDERED.

5  Dated: May 4, 2009

   _____
   MARILYN HALL PATEL
   United States District Court Judge
   Northern District of California